Jones and wife, Plaintiffs in error, vs. STATE EX REL. FALLIGANT, Defendant in error.

*February 11—March 7, 1933.*

10

For the plaintiffs in error there was a brief by *Benson, Mogensen & Butchart* of Racine, and oral argument by *Donald A. Butchart.*

For the defendant in error there was a brief by *Beck, Smith & Heft* of Racine, and oral argument by *Thorwald M. Beck.*

ROSENBERRY, C. J.   One of the questions raised relates to the jurisdiction of the municipal court of Racine county to issue a writ of *habeas corpus.*  The municipal court was created by ch. 72, Laws of 1897, which was amended by ch. 117 of the Laws of 1899 and chs. 83 and 303 of the Laws of 1909.   Sec. 4 as amended by ch. 83 is the section which confers jurisdiction upon the municipal court.   It is as follows:

"Section 4.  Said municipal court shall have and exercise powers and jurisdiction in all civil actions and special proceedings within the county of Racine in law and in equity, concurrent with, and equal to the jurisdiction of the circuit court for Racine county, where the value of the property in controversy, or the amount of money claimed or sought to be recovered, after deducting all payments and setoffs, shall not exceed twenty-five thousand dollars and also of all actions for the foreclosure of mortgages, and mechanics' liens, in which the amount claimed does not exceed the sum aforesaid, although the value of the property to be affected exceed that sum."

Sec. 2, art. VII, of the Wisconsin constitution provides:

"The judicial power of this state, both as to matters of law and equity, shall be vested in a supreme court, circuit courts, courts of probate, and in justices of the peace.  The legislature may also vest such jurisdiction as shall be deemed necessary in municipal courts, and shall have power to establish inferior courts in the several counties, with limited civil and criminal jurisdiction.   Provided, that the jurisdiction which may be vested in municipal courts shall not ex-

ceed in their respective municipalities that of circuit courts in their respective circuits as prescribed in this constitution." . . .

The municipal court of Racine county is an inferior court within the meaning of that term as used in sec. 8, art. VII, of the constitution. A municipal court is a creature of statute and of limited jurisdiction. It must appear upon the face of its proceeding that it acts within the powers conferred upon it. *Estate of Anson,* 177 Wis. 441, 188 N. W. 479.

On behalf of the defendants it is contended that this case is ruled by *State ex rel. Owen v. Reisen,* 164 Wis. 123, 159 N. W. 747. That action was one to abate a nuisance under sec. 3180*a,* Stats. 1915. It was originally begun in the circuit court for Iowa county and on the filing of an affidavit of prejudice it was removed to the county court of Iowa county. Sec. 1 of ch. 339, Laws of 1915, which conferred jurisdiction upon the county court of Iowa county, is too long to set out *in extenso.* The question was whether or not under the section the county court of Iowa county had jurisdiction to enjoin a public nuisance. The court said:

"It seems, if the legislature intended that the county court of Iowa county should have jurisdiction of such actions, mention would have been made of it as well as the various other classes of actions which were particularly mentioned. . . . The particular specification of jurisdiction conferred in certain cases excludes the idea that the legislature intended to confer jurisdiction in other cases. An action to abate a nuisance does not fall within any of the classes specified in the statute. If the legislature intended to confer general jurisdiction upon the county court of Iowa county in all cases where the amount involved did not exceed $25,000, it was easy to say so."

It was held that such jurisdiction was not conferred. It was sought to sustain the jurisdiction of the county court

of Iowa county on the authority of *Winchell v. Waukesha,* 110 Wis. 101, 85 N. W. 668. A question of jurisdiction was raised in the *Waukesha Case.* The language of the act conferring jurisdiction upon the county court of Waukesha county is to be found in ch. 1 of the Laws of 1899. The applicable provision is as follows:

"And such court shall exercise power and jurisdiction, in all civil actions and proceedings in law and equity, including the power of review of records on *certiorari,* discharging mortgages of record, and the exercise of any other special powers, concurrent with and equal to the jurisdiction of the circuit court of said county, when the value or amount in controversy, or the amount of money claimed or sought to be recovered, after deducting all payments and setoffs, shall not exceed twenty-five thousand dollars; but said court shall have jurisdiction of all actions in said county for the foreclosure of mortgages, in which the amount claimed does not exceed the sum above specified, although the property to be affected by the judgment exceeds the amount in value; and of all actions for divorce, or for affirmance or annulment of marriage contracts."

In that case it was held merely that the amount of property involved did not exceed $25,000 and other questions were not considered.

In this state by statutory definition the term "civil actions and special proceedings" includes every form of remedy available in courts of justice. Sec. 260.02. If sec. 4 had provided, "Said municipal court shall have and exercise powers and jurisdiction in all civil actions and special proceedings within the county of Racine and in law and in equity concurrent with and equal to the jurisdiction of the circuit court for Racine county," the jurisdiction of the municipal court, assuming the grant to be valid, would be equal to the jurisdiction of the circuit court within the county, which would without question include actions to abate a nuisance such as was under consideration in the *Waukesha* and *Reisen Cases.* The draftsman who prepared sec. 4 apparently intended to comply with the constitutional

mandate and limit the jurisdiction so that it would not be equal to and concurrent with the circuit court for Racine county. The defendants contend that sec. 4 should be construed to mean that the municipal court of Racine county has no jurisdiction except in cases where the value of the property in controversy is less than $25,000, and therefore, where no property is involved, no jurisdiction exists, unless otherwise specially conferred.

We cannot concur in this view. If a strict rule of construction be applied, it seems to us to be the clear legislative intent, as expressed in sec. 4, to confer jurisdiction in all civil actions and special proceedings upon the municipal court of Racine county equal to the circuit court except where the value of the property in controversy exceeds $25,000. It is a limitation, and although expressed in an inapt and clumsy manner it is considered that that was the legislative intent. The evident theory adopted in the drafting of the statute was to confer jurisdiction equal to that of the circuit court and then to place upon it a limitation in order that the civil jurisdiction of the court might be limited as required by sec. 2 of art. VII of the constitution. The granting clause is broad and all-inclusive. The remainder of the clause must be regarded as a limitation. If it was the intent of the legislature to confer jurisdiction only in those cases involving property where the amount involved was less than $25,000, it certainly went about it in a very awkward way. It is held that such was not the legislative intent. It is considered, therefore, that the municipal court of Racine county had jurisdiction of this action, *habeas corpus* being an action at law.

In disposing of the case at the close of the trial the trial court said:

"The parental right is so strong; the decisions have been so many; that I feel I can only decide this matter in one way and that is for the plaintiff here. There has not been one word of evidence which reflected upon the plaintiff,

Mr. Falligant, in any way, and I believe that he is entitled to the custody of his child."

It has long been a rule that the finding of the trial court will not be set aside unless the same is against the great weight and clear preponderance of the evidence. We fully realize that this rule applies more strongly perhaps in cases such as this than in ordinary cases. However, many if not most of the considerations involved in this case arise without dispute as to the facts. The child Leeana was born in the home of her grandparents in the city of Racine on December 4, 1918, and has lived there all her life except for about three months which she spent with her parents in Savannah in the year 1927. When Leeana was about one year old her father gave to the defendant J. M. Jones, by document executed before a notary public, full authority over the child Leeana. Down to 1925 the relator was, during the greater part of the time, at sea and of necessity had little contact with Leeana. While her mother, the wife of the plaintiff, lived in the home of her parents at the time, the child was to all intents and purposes nurtured, cared for, and protected by her grandparents. At the time this action was begun Leeana was past thirteen years of age, she was in her last year of junior high school, had very creditable standings, and was in good health. She was called as a witness upon the trial and a perusal of her testimony indicates that she is greatly attached to her grandparents and has very little of the normal feeling of a child for its parents. This is not at all unnatural when one considers that throughout her life she has been living in the home of her grandparents. She said that she was not willing to go to Savannah and that she did not love either her father or her mother. She seemed to be fully aware that this was not the conventional thing. She said:

"I hope you don't think me prejudiced, but really in my own mind I want to live here; I love my grandparents and everything and everybody here; my grandparents have been wonderful to me."

To remove this fourteen-year-old girl, now almost a young woman, from the environment in which she has lived throughout her life would be to sever every tie that binds her and to compel her to readjust her life to an entirely new environment and might well so disturb her and bring such confusion into her life as to destroy her chances for future happiness; this in spite of all the good intentions which her father and mother may have. For more than fourteen years they have practically abdicated their functions as parents and have permitted a state of affairs to grow and continue which must now be dealt with as a reality. The fact that the father was at sea, that he had to establish himself in business, that the child's mother has not been well and strong, and no doubt many other circumstances, explain and justify the conduct of the parents. It is equally plain and understandable why the grandparents desire to continue a relationship that was established practically at the birth of Leeana.

As we have said in many cases, the primary consideration in cases involving the right to the custody of a minor child is the welfare of the child. The so-called "right" of parents must yield when the exercise of that right will be detrimental to the child's interest. It is not a right to be vindicated in the law as the possession of a chattel should be. The so-called right is really a privilege to rear the child and prepare it for life. The trial court quite rightly attaches some importance to the age of the grandparents. However, the time is not far distant when this girl or young woman will take charge of her own life, whatever the decision of this court may be. It would seem proper and just to give some consideration and weight to her wishes and desires in the matter.

Our statutes (sec. 319.01) provide that a minor over fourteen years of age may nominate his own guardian, who if approved by the court shall be appointed. Courts ordinarily give much consideration in cases where guardians are

to be appointed to the wishes of children. In *In re Good-enough*, 19 Wis. *274, it was said that a girl twelve years old ought to have been consulted as to her choice, and it may be inferred at least that her choice should have influenced the action of the court. See *Bellmore v. McLeod*, 189 Wis. 431, 207 N. W. 699.

After giving the evidence in this case the most careful consideration with a full sense of the responsibility which rests upon us, we can come to no other conclusion than that as a matter of law the court gave undue emphasis to the parental right. While it may be true, as the trial court said, that the defendants did not rear their own daughter successfully, nevertheless the plaintiff and his wife have left their child with the defendants until her welfare depends upon the continuance of the relationship which has been established. This is not a case where parents who have temporarily parted with the custody of a child seek to regain it, at a time when they might well hope to re-establish themselves in the affectionate regard of the child. Leeana is not a child of tender years. A consideration of her testimony indicates that she has a clear mind, a strong will, and is unusually mature for her age. It is to be hoped that this situation will work out satisfactorily to the parents and the grandparents and to the best interests of the child, having regard to all the circumstances that may arise in the future. We can deal only with the record as it stands.

It is considered that the finding that the welfare of the child would be promoted by the transfer of the custody of the child to her parents in Savannah is against the great weight and clear preponderance of the evidence. This results in a reversal of the judgment of the trial court.

*By the Court.*—The judgment in the above entitled matter is reversed, and cause remanded with directions to dismiss the petition.

FRITZ and WICKHEM, JJ., dissent.