■ MAGWITCH, L.L.C., Appellant, v PUSSER's INC. et al., Respondents. [923 NYS2d 455]—

Order, Supreme Court, New York County (Barbara R. Kapnick, J.), entered July 1, 2009, which granted defendants' motion to dismiss the complaint for lack of personal jurisdiction, affirmed, without costs.

This action seeks to enforce payment of a promissory note made by Pusser's Ltd., a company incorporated in the British Virgin Islands (BVI), in favor of a bank in the BVI, which plaintiff, a New York corporation, purchased at a discounted price. Plaintiff is solely owned and managed by an attorney who resides in New Jersey and is licensed to practice in New York, New Jersey and the United States Virgin Islands.

On May 9, 2002, plaintiff entered into an assignment agreement with Barclays Bank PLC, whereby plaintiff purchased $3,300,000 of the debt owed by Pusser's Ltd. to Barclays in exchange for $1,500,000. Plaintiff was assigned the note and all security held by Barclays in Pusser's Ltd.'s assets. The agreement was governed by BVI law, and was signed by all parties in the BVI except plaintiff, which executed the agreement in New Jersey. The assignment of the security agreements, which provided for the collateral in the United States that secured the note, was executed by defendant Charles S. Tobias in the BVI and was governed by BVI law.

Following Pusser's Ltd.'s default on the note, plaintiff commenced an action in New Jersey federal court to recover on the note against the same defendants sued herein, namely, Pusser's Ltd., two entities affiliated with Pusser's Ltd. (one incorporated in Florida and the other in the BVI), and Tobias, a resident of the BVI who controls the corporate defendants. After the New Jersey action was dismissed for lack of personal jurisdiction, plaintiff commenced this action in Supreme Court, New York County. Defendants timely removed the action to federal court, based on the alleged existence of federal diversity jurisdiction; the removal was effected before the expiration of defendants' time to respond to the complaint by answer or motion. Plaintiff moved to remand the action to New York Supreme Court for lack of diversity, and defendants moved to dismiss for lack of personal jurisdiction. The federal court granted plaintiff's motion and directed that the entire matter, including defendants' pending motion to dismiss, be remanded to state court. Upon remand, Supreme Court granted the motion to dismiss. We affirm.

Contrary to the argument of plaintiff and the dissent, defendants did not waive any defenses based on lack of personal jurisdiction by removing the action to federal court. We agree with the view of the Third Department, expressed in a decision is-

sued after this appeal was argued, that *Farmer v National Life Assn. of Hartford, Conn.* (138 NY 265 [1893]), relied on by plaintiff and the dissent, is no longer binding because it was "based on the outdated distinction between special and general appearances . . . and also on the removal procedure applicable at that time, long since superseded by the CPLR, the Federal Rules of Civil Procedure, and 28 USC § 1446" (*Benifits by Design Corp. v Contractor Mgt. Servs., LLC*, 75 AD3d 826, 828 [2010]; *see also* Siegel, NY Prac § 109 [4th ed] [under prior law "a 'special' appearance . . . was used by the defendant for the sole purpose of objecting to the court's jurisdiction of his person," but "(t)he CPLR abolished the 'special' appearance, and since the 'general' appearance was used only to differentiate it from the special one, both categories have disappeared under the CPLR"]). "Moreover, though not controlling, we note that removal does not waive the defense of lack of personal jurisdiction in federal court" (*Benifits by Design*, 75 AD3d at 828 [citations omitted]). While this Court rejected a similar argument against *Farmer*'s continuing viability in *Quinn v Booth Mem. Hosp.* (239 AD2d 266 [1997]), we find the reasoning of the Third Department in the more recent *Benifits by Design* case persuasive and, given the desirability of uniform construction of the CPLR throughout the state, follow the latter decision.

The motion court properly dismissed the action for lack of personal jurisdiction. Although CPLR 302 (a) (1) permits a court to exercise personal jurisdiction over any nondomiciliary who, in person or through an agent, "transacts any business within the state or contracts anywhere to supply goods or services in the state," defendants' actions here did not amount to purposeful activity by which they availed themselves of the privilege of conducting business in New York. The acts of sending payments to a New York bank account and correspondence to a New York address, and engaging in telephone discussions with plaintiff's principal, who also was defendants' legal advisor while he was in New York, were not a sufficient basis to satisfy the statutory requirements (*see Kimco Exch. Place Corp. v Thomas Benz, Inc.*, 34 AD3d 433, 434 [2006], *lv denied* 9 NY3d 803 [2007]).

The court also properly found that it could not exercise personal jurisdiction over defendants pursuant to CPLR 302 (a) (3). That section provides for jurisdiction over a defendant who (1) commits a tortious act outside New York (2) that causes injury within New York (3) where the defendant either (i) does or solicits business, or engages in any other course of conduct, or derives substantial revenue from activities in New York, or

(ii) expects or should expect that its tortious act will have consequences in New York, and derives substantial revenue from interstate or international commerce (*see* CPLR 302 [a] [3]; *see generally Cooperstein v Pan-Oceanic Mar.*, 124 AD2d 632, 633 [1986], *lv denied* 69 NY2d 611 [1987]). The determination of whether a tortious act committed outside New York causes injury inside the state is governed by the "situs-of-injury" test, requiring determination of the location of the original event that caused the injury (*see Bank Brussels Lambert v Fiddler Gonzalez & Rodriguez*, 171 F3d 779, 791 [2d Cir 1999]; *see also Kramer v Hotel Los Montèros S. A.*, 57 AD2d 756 [1977], *lv denied* 43 NY2d 649 [1978]).

Here, the original event that caused the injury was not, as plaintiff maintains, the disbursement of funds from New York to purchase the note from Barclays, since there would not have been any injury if payment had been made when due. Rather, the injury was caused by misrepresentations about the transfer of assets and the transfer and diversion of funds, which occurred in the BVI and locations other than New York, and resulted in the unavailability of funds to pay plaintiff the amounts due on the note. The second part of the test also cannot be satisfied, since defendants do not either: regularly do or solicit business, or engage in any other persistent course of conduct, or derive substantial revenue for goods or services used or rendered in New York; or reasonably expect the alleged tortious act to have consequences in the state, and derive substantial revenue from interstate or international commerce (*see* CPLR 302 [a] [3]). Concur—Tom, J.P., Friedman, Acosta and Román, JJ.

McGuire, J., dissents in a memorandum as follows: This appeal is controlled by *Farmer v National Life Assn. of Hartford, Conn.* (138 NY 265 [1893]) and our decision in *Quinn v Booth Mem. Hosp.* (239 AD2d 266 [1997]). In *Farmer*, the plaintiff commenced an action in state Supreme Court, the defendant removed it to federal court, and the federal court remanded it to Supreme Court. The defendant then moved to dismiss on the grounds that it had not been properly served and that the admission of service was defective. On the defendant's appeal to the Court of Appeals from the denial of its motion, the Court held that the defendant had waived this objection when it removed the action to federal court: "It is unnecessary to consider what force, if any, the objections to the mode of service of process in this case and to the sufficiency of the admission of service might have had, if they had been seasonably made, for we think it must be held that the defendant necessarily submitted itself to

the jurisdiction of the state court and waived any defect there may have been in the procedure to acquire jurisdiction of its person, by the proceeding which it initiated and consummated for the removal of the action into the United States Circuit Court. There could be no transfer of the cause from the state to the federal jurisdiction, unless there was an action pending. The federal statute required it, and the petition must so allege, and must also aver that the petitioner is a party to the action . . . [The rule recognizing the right of a defendant to challenge service after certain special appearances] has no application where the defendant becomes an actor in the suit and institutes a proceeding which has for its basis the existence of an action to which he must be a party. He thereby submits himself to the jurisdiction of the court" (138 NY at 269-270).

As is evident, the Court concluded both that the act of removing the case necessarily entailed a concession by the defendant that jurisdiction of its person had been properly acquired by the state court, and that the concession was conclusive. The Court reiterated this rationale in the course of discussing with approval a federal case in which, following the removal of an action commenced in state court, the court denied the defendant's motion to dismiss on the ground of defective service, reasoning that, "[b]y bringing it here, he voluntarily treats it as properly commenced and actually pending in the state court, and he cannot, after it is entered here, treat it otherwise" (*id.* at 271, quoting *Sayles v Northwestern Ins. Co.*, 2 Curtis C.C. 212, 21 F Cas 608 [Cir Ct RI 1856, No. 12,421]). The Court stated: "The principle thus formulated, is, we think, sound, reasonable and just. It cannot be tolerated that a defendant shall question the jurisdiction of a state tribunal over his person, after he has effected a transfer of the cause to another court, by placing upon its records an affirmation under oath of the pendency of the action, and of his relation to it as a party, and obtained the approval of the court of the bond required as a condition of its removal. If the cause is subsequently remanded, he cannot be heard to say that his own proceedings have in effect been *coram non judice*" (*id.* at 271-272).

We followed *Farmer* in *Quinn*, holding that the defendants' "filing of a removal petition to Federal court effected a general appearance precluding their objections to defective service under CPLR 308 (1) or (2) after the case was remanded to State court" (*Quinn*, 239 AD2d at 266). Moreover, we rejected the "suggest[ion] that *Farmer* is no longer valid" (*id.*).

Defendants argue that *Farmer* and *Quinn* are not controlling because "both cases involv[e] a challenge to [personal jurisdic-

tion based on] service of process only," not a "challenge to personal jurisdiction under the long-arm statute or the due process clause." They cite no authority in support of this effort to create different classes of challenges to personal jurisdiction. Nor do they explain why an objection to personal jurisdiction based on improper (or even a complete lack of) service of process is of lesser moment than or otherwise stands on a different footing from objections to personal jurisdiction based on either the inapplicability of a long-arm statute or the want of sufficient contacts to satisfy due process.* Aside from these difficulties with defendants' argument, nothing in *Farmer* suggests that its waiver analysis turned on the specific reason personal jurisdiction allegedly was lacking. The insurmountable difficulty, however, flows from the rationale of *Farmer*—removal to federal court entails a concession that personal jurisdiction properly was obtained by the state court—and our obligation to accept its validity. That rationale applies with the same force to all objections to personal jurisdiction, be they based on the inapplicability of a long-arm statute, the insufficiency of contacts or improper service.

Defendants also argue that: (1) "a combined reading of CPLR 320 . . . and 3211 . . . establishes that removal does not constitute an appearance which . . . waives jurisdictional objections" and (2) "[c]onsistent with [federal precedents], the Federal Rules of Civil Procedure plainly allow objection to personal jurisdiction once a case is removed from state to federal court." The latter argument was raised unsuccessfully in *Quinn* (reply brief at 7; *Quinn v Booth Mem. Hosp.*, 239 AD2d 266 [1997], *supra*). Moreover, both arguments apply with equal force to the waiver analysis in *Farmer*. Whatever their force, acceptance of either of these arguments would require us either to refuse to follow *Farmer* or to limit its holding to its particular facts without identifying a basis for doing so that does not equally undermine that holding.

At least implicitly, the majority rejects defendants' attempt to distinguish *Farmer* and *Quinn*. The majority, however, chooses to follow the recent decision of a panel of the Third Department in *Benifits by Design Corp. v Contractor Mgt. Servs., LLC* (75 AD3d 826 [2010]), because its reasoning is persuasive and a

---

* Similarly, in specifying when an appearance confers personal jurisdiction, CPLR 320 (b) does not recognize different categories of objections to personal jurisdiction. Moreover, in contrast to rule 12 (b) (2), (4) and (5) of the Federal Rules of Civil Procedure, CPLR 3211 "centers all objections going to personal jurisdiction under the single caption of paragraph 8" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:30).

"uniform construction of the CPLR throughout the state" is desirable. The rationale of *Farmer* certainly is open to question, its inconsistency with federal law is clear, and it arguably unduly burdens the exercise of a federal right. But it has not been overruled by the Court of Appeals, and *Quinn* and *Benifits by Design* come to different conclusions on the question of whether *Farmer* was superseded by the CPLR. Moreover, defendants do not contend that *Farmer* is no longer good law but seek only to distinguish it, and thus the majority decides this appeal on a ground not raised by defendants (*see Misicki v Caradonna*, 12 NY3d 511, 519 [2009] ["to decide this appeal on a distinct ground that we winkled out wholly on our own would pose an obvious problem of fair play"]). For these reasons, I would follow *Farmer* despite my reservations about its rationale.

Accordingly, I would reverse and deny defendant's motion to dismiss for lack of personal jurisdiction.